**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA and the COMMONWEALTH OF VIRGINIA, ) ) ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No.   3:20-cv-177 |
| ) | |
| VIRGINIA ELECTRIC AND POWER COMPANY (d/b/a DOMINION ENERGY VIRGINIA) ) ) ) | COMPLAINT |
| ) | |
| Defendant. ) ) ) | |

The United States of America ("United States"), by authority of the Attorney General of

the United States and on behalf of the United States Environmental Protection Agency ("EPA"),

and the Commonwealth of Virginia, on behalf of the Virginia Department of Environmental

Quality ("VADEQ") (collectively "Plaintiffs") file this Complaint and allege as follows:

## INTRODUCTION

1.      This is a civil action for assessment of civil penalties and injunctive relief brought

against Defendant Virginia Electric and Power Company (d/b/a Dominion Energy Virginia)

("Defendant" or "Dominion") pursuant to the following statutes: (a) the Federal Water Pollution

Control Act ("Clean Water Act" or "CWA") and the Virginia State Water Control Law ("SWCL")

for violations of conditions and limitations of National Pollutant Discharge Elimination System

("NPDES") permits issued to Dominion at certain of Defendant's steam electric power generation

facilities in Virginia and West Virginia; (b) the SWCL for unpermitted discharges of industrial

waste or other waste to State waters via seeps at the Chesterfield Power Station Facility in violation

of Va. Code § 62.1-44.5; and (c) the Emergency Planning and Community Right-to-Know Act

("EPCRA") and the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") for violations of the hazardous substance release notification requirements at Defendant's steam electric power generation facilities in Virginia and West Virginia.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under Section 309(b) of the CWA, 33 U.S.C. § 1319(b), Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), and 28 U.S.C. §§ 1331, 1345, and 1355. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the state law claims of the Commonwealth of Virginia because they are related to the federal law claims and form a portion of the same case or controversy.

3.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391(b)(2) and (c)(2) and 1395(a), as well as Section 309(b) of the CWA, 33 U.S.C. § 1319(b) and Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), because it is the judicial district in which Defendant is located, is doing business, and in which a substantial part of the alleged violations in the Complaint occurred.

4.      Notice of the action's commencement has been provided to the Commonwealth of Virginia and the State of West Virginia in accordance with Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANT

5.      Virginia Electric and Power Company (d/b/a Dominion Energy Virginia) is a corporation with its principal place of business in Richmond, Virginia. Virginia Electric Power Company is a wholly owned subsidiary of Dominion Energy, Inc.

6.      During the time period relevant to the claims in this Complaint, Defendant owned and operated the facilities subject to this Complaint.

## STATUTORY FRAMEWORK

### I.    Clean Water Act

#### Statutory Background

7.    Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" to waters of the United States, except, *inter alia*, in compliance with an NPDES permit issued by EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

8.    Section 502(5) of the CWA, 33 U.S.C. § 1362(5), defines "person" as, *inter alia*, an "individual, corporation, partnership, [or] association."

9.    Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines the term "discharge of a pollutant" as, *inter alia*, "any addition of any pollutant to navigable waters from any point source."

10.    Section 502(6) of the CWA, 33 U.S.C. § 1362(6), defines "pollutant" to include a wide range of materials, including solid waste, rock, sand, and industrial waste.

11.    Section 502(14) of the CWA, 33 U.S.C. § 1362(14), defines "point source" as any "discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, [or] container . . . from which pollutants are or may be discharged."

12.    Section 502(7) of the CWA, 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

#### NPDES Permit Program

13.    Under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), EPA has the authority to issue an NPDES permit "for the discharge of any pollutant" to waters of the United States if "such discharge will meet . . . all applicable requirements" of the CWA and other conditions that the

permitting authority determines necessary to implement the CWA.

14.     A state may administer its own NPDES permit program with EPA's approval. *See* 33 U.S.C. § 1342(b).

15.     The Commonwealth of Virginia has been authorized by EPA to administer an NPDES program for regulating the discharges of pollutants to navigable waters within the state's jurisdiction. 40 Fed. Reg. 20129 (May 8, 1975). The Commonwealth of Virginia, through the State Water Control Board is authorized to issue, amend, revoke and enforce NPDES permits in the Commonwealth of Virginia in accordance with the SWCL. Va. Code § 62.1-44.15(5).

16.     The State of West Virginia has been authorized by EPA to administer an NPDES program for regulating the discharges of pollutants to navigable waters within the state's jurisdiction. 47 Fed. Reg. 22363 (May 24, 1982). The West Virginia Department of Environmental Protection ("WVDEP") is authorized to issue NPDES permits in accordance with the West Virginia Water Pollution Control Act ("WPCA"). W. Va. Code § 22-11-8.

17.     EPA's approval of Virginia's and West Virginia's programs does not affect its authority to enforce the CWA or to enforce a state-issued NPDES permit. *See* 33 U.S.C. § 1342(i).

18.     A "permit" is "an authorization, license, or equivalent control document issued by EPA or an 'approved State' to implement the requirements of [the CWA]." 40 C.F.R. § 122.2 (definitions).

19.     An NPDES permit typically contains, among other things, effluent limitations, water quality standards, monitoring and reporting requirements, standard conditions applicable to all permits, and special conditions where appropriate. *See* 40 C.F.R. §§ 122.41-122.50 (NPDES permit conditions).

20.     Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate, and concentration of chemical, physical, biological,

and other constituents which are discharged from point sources. 33 U.S.C. § 1362(11); *see also* 9 VAC 25-31-10.

## NPDES Stormwater Permits

21.     Section 402(p) of the CWA, 33 U.S.C. § 1342(p), and 40 C.F.R. § 122.26(a)(1)(ii) require stormwater discharges associated with industrial activity to comply with all applicable provisions of Section 301 of the CWA, 33 U.S.C. § 1311.

22.     Under EPA's regulations, any person who discharges or who proposes to discharge stormwater associated with industrial activity or small construction activity is required to apply for an individual permit or to seek coverage under a promulgated stormwater general permit. *See* 40 C.F.R. §§ 122.21(a), 122.26(c), 122.28, 123.25.

23.     Pursuant to 40 C.F.R. § 122.26(b)(14)(vii), steam electric power generating facilities, including coal handling sites, are considered to be engaging in industrial activities.

24.     Pursuant to 40 C.F.R. § 122.26(b)(14)(x), industrial activity for which associated stormwater discharges require a Section 402 permit includes construction activity that disturbs five acres or more of total land area. Construction activity includes "clearing, grading, and excavation."

## Enforcement

25.     Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the United States to commence a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

26.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), and EPA's 2013 and 2019 Civil Monetary Penalty Inflation Adjustment Rules, 78 Fed. Reg. 66643 (Nov. 6, 2013) and 84 Fed. Reg. 2056 (Feb. 6, 2019), codified at 40 C.F.R. § 19.4, any person who violates any condition or limitation contained in a NPDES permit issued pursuant to Section 402 of the CWA,

33 U.S.C. § 1342, shall be subject to a civil penalty not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and not to exceed $54,833 per day for each violation which takes place after November 2, 2015.

## II.  The Virginia State Water Control Law

27.     It is a violation of the SWCL for any "person" to discharge "industrial wastes" or "other wastes" into "state waters" except in compliance with a Virginia NPDES permit. Va. Code § 62.1-44.5(A)(1).

28.     In addition, it is a violation of the SWCL for any "person" to discharge "stormwater" into "state waters" from "land disturbing activities" except in compliance with a Virginia NPDES permit. Va. Code § 62.1-44.5(A)(5).

29.     The SWCL defines "person" as "an individual, corporation, partnership, association, governmental body, municipal corporation, or any other legal entity." Va. Code § 62.1-44.3.

30.     The SWCL defines "industrial waste" as "liquid or other wastes resulting from any process of industry, manufacture, trade, or business or from the development of any natural resources." Va. Code § 62.1-44.3.

31.     The SWCL defines "other waste" as "decayed wood, sawdust, shavings, bark, lime, garbage, refuse, ashes, offal, tar, oil, chemicals, and all other substances except industrial wastes and sewage which may cause pollution in any state waters." Va. Code § 62.1-44.3.

32.     The SWCL defines "state waters" as "all water, on the surface and under the ground, wholly or partially within or bordering the Commonwealth or within its jurisdiction, including wetlands." Va. Code § 62.1-44.3.

33.     Va. Code § 62.1-44.15(10) authorizes the State Water Control Board to "adopt such regulations as it deems necessary to enforce the general water quality management program in . .

. the Commonwealth."

34.     Va. Code § 62.1-44.23 authorizes Virginia to commence a civil action for injunctive relief to compel compliance with the terms or conditions of a valid NPDES permit and the SWCL. *See* Va. Code § 62.1-44.23.

35.     "Except as otherwise provided in [the SWCL], any person who violates any provision of [the SWCL], or who fails, neglects, or refuses to comply with any order of the Board, or order of a court, issued as herein provided, shall be subject to a civil penalty not to exceed $32,500 for each violation within the discretion of the court. Each day of violation of each requirement shall constitute a separate offense." Va. Code § 62.1-44.32.

## III.     EPCRA and CERCLA

36.     Section 329(7) of EPCRA, 42 U.S.C. § 11049(7), and Section 101(21) of CERCLA, 42 U.S.C. § 9601, each define a "person" as including a corporation.

37.     Section 103(a) of CERCLA states that "[a]ny person in charge of . . . an . . . onshore facility shall, as soon as he has knowledge of any release. . . of a hazardous substance . . . in quantities equal to or greater than those determined pursuant to [section 102 of CERCLA], immediately notify the National Response Center [("NRC")]." 42 U.S.C. § 9603(a).

38.     Section 102 of CERCLA, 42 U.S.C. § 9602, directs the Administrator of EPA to promulgate regulations designating hazardous substances and establishing reportable quantities for those hazardous substances. EPA's list of hazardous substances and reportable quantities is set forth at 40 C.F.R. § 302.4. Ammonia is included in this list.

39.     Section 109(c) of CERCLA provides as follows:

The President may bring an action in the United States district court for the appropriate district to assess and collect a penalty of not more than $25,000 per day for each day during which the violation (or failure or refusal) continues in the case of . . . (1) A violation of the notice requirements of section 9603(a) . . . of this title. . . . In the case of a second or subsequent violation (or failure or refusal), the amount of such penalty may be not more

than $75,000 for each day during which the violation (or failure or refusal) continues.

42 U.S.C. § 9609(c).

40.     Section 302 of EPCRA, 42 U.S.C. § 11002, requires EPA to publish a list of extremely hazardous substances, and to identify a "reportable quantity" for each such substance. EPA's list of extremely hazardous substances and their reportable quantities is set forth at 40 C.F.R. Part 355, Appendices A and B. Ammonia is included in this list and has a reportable quantity of 100 pounds.

41.     Section 304 of EPCRA, 42 U.S.C. § 11004, and the regulation set forth at 40 C.F.R. § 355.33, require the owner or operator of a facility at which a hazardous chemical is produced, used, or stored to notify certain government authorities when there is a release of a reportable quantity of an extremely hazardous substance or CERCLA hazardous substance. Specifically, Section 304(b) of EPCRA requires that the owner and operator immediately notify the State Emergency Response Commission ("SERC") of any State likely to be affected by the release and the emergency coordinator for the Local Emergency Planning Committee ("LEPC") for any area likely to be affected by the release. Additionally, Section 304(c) requires the owner/operator to submit, as soon as practicable, a written emergency follow-up notice updating the information required under Section 304(b).

42.     Pursuant to Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), and Section 109(c) of CERCLA, 42 U.S.C. § 9609(c), and EPA's 2013 and 2019 Civil Monetary Penalty Inflation Adjustment Rules, 78 Fed. Reg. 66643 (Nov. 6, 2013), and 84 Fed. Reg. 2056 (Feb. 6, 2019), codified at 40 C.F.R. § 19.4, any person who violates a reporting requirement of Section 304 of EPCRA, 42 U.S.C. § 11004, or Section 103 of CERCLA, 42 U.S.C. § 9603, shall be subject to a civil penalty not to exceed $37,500 per day for each violation that occurred after January 12, 2009 through November 2, 2015; and not to exceed $57,317 per day for each violation which takes

place after November 2, 2015.

## GENERAL ALLEGATIONS

43.     The Defendant is a "person" within the meaning of 33 U.S.C. § 1362(5), 42 U.S.C.

§ 9601, 42 U.S.C. § 11049(7), and Va. Code § 62.1-44.3.

44.     At all relevant times, Defendant did business in Virginia and West Virginia.

45.     Defendant owns and/or operates the steam electric power generation facilities and

associated construction sites listed in Exhibits 1-6 that are subject to the allegations included in

this Complaint (the "Facilities").

46.     As a result of its power generation and construction operations at the Facilities,

Defendant generates coal ash, wastewater, sediment, and other excess materials that are, or

contain, various "pollutants" as that term is defined in 33 U.S.C. § 1362(6), 40 C.F.R. § 122.2, and

9 VAC 25-31-10. These pollutants include rock, sand, total ammonia nitrogen, total petroleum

hydrocarbons, total recoverable manganese, total suspended solids, and other pollutants associated

with coal ash discharge ("coal ash contact water"), which includes aluminum, antimony, arsenic,

barium, beryllium, boron, cadmium, chloride, chromium III, chromium IV, cobalt, copper, iron,

lead, mercury, molybdenum, nickel, selenium, silver, thallium, vanadium, and zinc.

## CLAIM ONE FOR RELIEF
### (Violations of NPDES Construction Stormwater Permits)

47.     Plaintiffs reallege and incorporate by reference all other paragraphs of this

Complaint as if fully set forth herein.

48.     Defendant owns and/or operates the facilities engaged in construction activity that

are subject to NPDES construction stormwater permits issued by Virginia listed in Exhibit 1.

49.     Each of the NPDES construction stormwater permits identified in Exhibit 1 include,

*inter alia*, conditions that require Defendant to implement a Stormwater Pollution Prevention Plan

("SWPPP"), install and maintain best management practices ("BMPs"), and conduct self-inspections at subject sites.

50.     As set forth in Exhibit 1, Defendant has violated applicable NPDES construction stormwater permits, primarily due to failure to implement and maintain erosion control measures.

51.     Each failure to adequately implement NPDES permit conditions identified in Exhibit 1 is a violation of the applicable NPDES permits issued under Section 402 of the CWA, 33 U.S.C. § 1342.

52.     Defendant's violations of conditions contained in the applicable NPDES permits also constitute violations of Va. Code § 62.1-44.5.

53.     Unless enjoined, Defendant's violations are likely to continue.

54.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Va. Code § 62.1-44.23, Defendant is liable for injunctive relief.

55.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 per day for each violation occurring on or after January 12, 2009 through November 2, 2015, and $54,833 per day for each violation that occurred after November 2, 2015.

56.     "Except as otherwise provided in [the SWCL], any person who violates any provision of [the SWCL], or who fails, neglects, or refuses to comply with any order of the Board, or order of a court, issued as herein provided, shall be subject to a civil penalty not to exceed $32,500 for each violation within the discretion of the court. Each day of violation of each requirement shall constitute a separate offense." Va. Code § 62.1-44.32.

## CLAIM TWO FOR RELIEF
### (Violations of NPDES Permit Effluent Limitations)

57.     Plaintiffs reallege and incorporate by reference all other paragraphs of this

Complaint as if fully set forth herein.

58.     Defendant owns and/or operates the power generation facilities that are subject to NPDES permits issued by Virginia or West Virginia listed in Exhibit 2.

59.     The NPDES permits identified in Exhibit 2 include effluent limitations for, *inter alia*, total suspended solids, total petroleum hydrocarbons, total recoverable manganese, and total ammonia nitrogen. *See* Exhibit 2.

60.     These NPDES permits also impose self-monitoring and self-reporting requirements, including submission to the permitting authorities of discharge monitoring reports ("DMRs"), which summarize discharge monitoring data and indicate non-compliance with permit limits.

61.     Based on DMRs submitted to state permitting authorities and certified information provided by Defendant in response to information requests issued by EPA pursuant to Section 308 of the CWA, 33 U.S.C. § 1318, Defendant has exceeded effluent limitations in applicable NPDES permits on at least eight occasions. *See* Exhibit 2

62.     Each exceedance identified in Exhibit 2 is a violation of the applicable NPDES permits issued under Section 402 of the CWA, 33 U.S.C. § 1342.

63.     Defendant's discharges of pollutants in excess of effluent limitations contained in the applicable NPDES permits issued by Virginia also constitute violations of Va. Code § 62.1-44.5.

64.     Unless enjoined, Defendant's violations are likely to continue.

65.     Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Va. Code § 62.1-44.23, Defendant is liable for injunctive relief.

66.     Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 per day for each violation occurring on or after January 12,

2009 through November 2, 2015, and $54,833 per day for each violation that occurred after November 2, 2015.

67.     "Except as otherwise provided in [the SWCL], any person who violates any provision of [the SWCL], or who fails, neglects, or refuses to comply with any order of the Board, or order of a court, issued as herein provided, shall be subject to a civil penalty not to exceed $32,500 for each violation within the discretion of the court. Each day of violation of each requirement shall constitute a separate offense." Va. Code § 62.1-44.32.

## CLAIM THREE FOR RELIEF
### (Violation of NPDES Permit Notice Condition)

68.     Plaintiffs reallege and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

69.     Defendant owns and operates the Possum Point Facility in Virginia. In 2015, the Facility was subject to NPDES Permit VA0002071, issued in 2013 (the "2013 Possum Point Permit").

70.     The 2013 Possum Point Permit authorized discharge from Outfall 005 Ash Pond E consistent with and according to the specific requirements and obligations set forth in Part II(J) and required advance notice to VADEQ before making certain changes to the facility that might affect discharges.

71.     Discharges from Outfall 005 authorized by the 2013 Possum Point Permit occur by skimming effluent from the top of the impoundment pond after sufficient time is allowed for adequate settlement of pollutants.

72.     From on or about March 25, 2015, through April 28, 2015, Defendant conducted dewatering activities intended to remove stored water from Ash Pond E to facilitate its eventual RCRA Coal Combustion Residuals ("CCR") closure (the "Ash Pond E Dewatering"). *See* Exhibit

3.

73.     During this time period, Defendant's actions resulted in the net removal of an estimated volume of 27.5 million gallons of impoundment water from Ash Pond E by discharge at Outfall 005.

74.     The Ash Pond E Dewatering was achieved by lowering the elevation of the decant structure of Outfall 005 by the removal of stoplogs.

75.     This treatment structure alteration resulted in a potential increase in the nature or quantity of pollutants being discharged.

76.     Defendant did not provide specific advance notification to VADEQ before commencing the Ash Pond E Dewatering.

77.     Failure to provide specific advance notification to VADEQ precluded VADEQ from: (a) considering whether such proposed discharges would be protective of the receiving water quality and otherwise appropriate, and (b) exercising its authority as appropriate to require additional monitoring, treatment, or other precautions.

78.     VADEQ modified the 2013 Possum Point Permit in January 2016 ("2016 Modified Permit") to allow for dewatering activities at Possum Point in preparation of meeting the requirements of the CCR closure rule. The 2016 Modified Permit included effluent limits for a greater number of pollutants.

79.     Defendant's failure to provide specific advance notification of the Ash Pond E Dewatering to VADEQ is a violation of the applicable NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

80.     Violating a condition in the applicable NPDES permit also constitutes violation of Va. Code § 62.1-44.5.

81.     Unless enjoined, Defendant's violations are likely to continue.

82.    Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Va. Code § 62.1-44.23, Defendant is liable for injunctive relief.

83.    Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 per day for each violation occurring on or after January 12, 2009 through November 2, 2015, and $54,833 per day for each violation that occurred after November 2, 2015.

84.    "Except as otherwise provided in [the SWCL], any person who violates any provision of [the SWCL], or who fails, neglects, or refuses to comply with any order of the Board, or order of a court, issued as herein provided, shall be subject to a civil penalty not to exceed $32,500 for each violation within the discretion of the court. Each day of violation of each requirement shall constitute a separate offense." Va. Code § 62.1-44.32.

## CLAIM FOUR FOR RELIEF
### (Violation of NPDES Permit Discharge Prohibition)

85.    Plaintiffs reallege and incorporate by reference all other paragraphs of this Complaint as if fully set forth herein.

86.    Defendant owns and/or operates the facilities subject to NPDES permits issued by Virginia listed in Exhibit 4.

87.    Each NPDES permit identified in Exhibit 4 prohibits discharges from the facility into state waters or that affect state waters, where the discharges are not authorized by a permit.

88.    Exhibit 4 lists eight discharges of pollutants at Defendants' permitted facilities that were not authorized by the applicable permit.

89.    Each unauthorized discharge of pollutants identified in Exhibit 4 is a violation of the applicable NPDES permit issued under Section 402 of the CWA, 33 U.S.C. § 1342.

90.    Violating a condition in the applicable NPDES permit also constitutes violation of

Va. Code § 62.1-44.5.

91. Unless enjoined, Defendant's violations will continue.

92. Pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), and Va. Code § 62.1-44.23, Defendant is liable for injunctive relief.

93. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 per day for each violation occurring on or after January 12, 2009 through November 2, 2015, and $54,833 per day for each violation that occurred after November 2, 2015.

94. "Except as otherwise provided in [the SWCL], any person who violates any provision of [the SWCL], or who fails, neglects, or refuses to comply with any order of the Board, or order of a court, issued as herein provided, shall be subject to a civil penalty not to exceed $32,500 for each violation within the discretion of the court. Each day of violation of each requirement shall constitute a separate offense." Va. Code § 62.1-44.32.

### CLAIM FIVE FOR RELIEF
#### (VADEQ Only SWCL Violations)

95. Plaintiff VADEQ realleges and incorporates by reference all other paragraphs of this Complaint related to its VADEQ only SWCL Claims as if fully set forth herein. VADEQ makes the following allegations in support of alleged state only SWCL violations at the Chesterfield Power Station, as described in Exhibit 5.

96. On July 21, 2017, the Virginia Department of Game and Inland Fisheries ("DGIF") identified an area of groundwater seepage along the James River shoreline adjacent to Defendant's Chesterfield Power Station and subsequently notified both VADEQ and Defendant of the same.

97. Defendant investigated and later determined that the groundwater seepage identified by DGIF, which contained elevated concentrations of constituents and was daylighting

to the James River, originated from an existing coal pile ("Eastern Shoreline Seeps").

98.     On May 11, 2018, Defendant self-reported to VADEQ its observation, at low tide, of a small area of groundwater seepage south of a coal ash impoundment ("Upper Ash Pond Seeps") at the Chesterfield Power Station, which contained elevated concentrations of constituents and was daylighting along the James River shoreline.

99.     Defendant has taken actions, with VADEQ's direction and approval, to characterize and mitigate the Eastern Shoreline Seeps, including installation of a groundwater interceptor trench and collection system, which was completed in April 2019.

100.    Each unauthorized discharge of pollutants without an NPDES permit is a violation of Va. Code § 62.1-44.5.

101.    Unless enjoined, Defendant's violations will continue.

102.    Pursuant to Va. Code § 62.1-44.23, Defendant is liable for injunctive relief.

103.    "Except as otherwise provided in [the SWCL], any person who violates any provision of [the SWCL], or who fails, neglects, or refuses to comply with any order of the Board, or order of a court, issued as herein provided, shall be subject to a civil penalty not to exceed $32,500 for each violation within the discretion of the court. Each day of violation of each requirement shall constitute a separate offense." Va. Code § 62.1-44.32.

## CLAIM SIX FOR RELIEF
### (Federal Only EPCRA Violations)

104.    Plaintiff the United States realleges and incorporates by reference all other paragraphs of this Complaint related to its federal Claims as if fully set forth herein.

105.    At all times relevant to this Complaint, Defendant owned and operated the Bellemeade Power Station in Richmond, Virginia ("Bellemeade") and the Mt. Storm Power Station in West Virginia ("Mt. Storm") that are the subject of this action within the meaning of

Section 304 of EPCRA, 42 U.S.C. § 11004. *See* Exhibit 6.

106.    The Bellemeade and Mt. Storm facilities are "facilities" within the meaning of Section 329(4) of EPCRA, 42 U.S.C. § 11049(4).

107.    The Bellemeade and Mt. Storm facilities produce, use, or store ammonia, which is an extremely hazardous substance within the meaning of Section 329(3) of EPCRA, 42 U.S.C. § 11049(3).

108.    Ammonia has a reportable quantity of 100 pounds. 40 C.F.R. § 302.4; 40 C.F.R. Part 355, Appendices A and B.

109.    On November 26, 2015, the Bellemeade Facility released at least 220 pounds of ammonia into the environment (the "Bellemeade Release").

110.    Defendant did not immediately report the Bellemeade Release to the SERC or LEPC, but rather reported the Release to the respective authorities after four days and 15 hours.

111.    On March 15, 2017, the Mt. Storm Facility released at least 383 pounds of ammonia into the environment (the "Mt. Storm Release").

112.    Defendant did not immediately report the Mt. Storm Release to the SERC or LEPC, but rather reported the Release to the respective authorities after over 13 hours.

113.    Pursuant to Section 304(b) of EPCRA, 42 U.S.C. § 11004, and the regulation set forth at 40 C.F.R. Part 355, Subpart C, Defendant was required to immediately notify the SERC and the LEPC of a release equal to or greater than the reportable quantity of any EPCRA extremely hazardous substance or CERCLA hazardous substances.

114.    Each failure to provide timely notification of these releases described above is a separate violation of Section 304(b) of EPCRA, 42 U.S.C. § 11004(b).

115.    Pursuant to Section 325(b)(3) of EPCRA, 42 U.S.C. § 11045(b)(3), Defendant is liable for civil penalties of up to $37,500 per day for each violation for all violations occurring on

or after January 12, 2009 through November 2, 2015, and $57,317 per day for each violation that occurred after November 2, 2015.

## CLAIM SEVEN FOR RELIEF
### (Federal Only CERCLA Violations)

116.    Plaintiff the United States realleges and incorporates by reference all other paragraphs of this Complaint related to its federal claims as if fully set forth herein.

117.    At all times relevant to this Complaint, Defendant owned and operated the Bellemeade and Mt. Storm facilities within the meaning of Section 103 of CERCLA, 42 U.S.C. § 9603. *See* Exhibit 6.

118.    The Bellemeade and Mt. Storm facilities are "onshore facilities" within the meaning of Section 101(18) of CERCLA, 42 U.S.C. § 9601(18), and 40 C.F.R. § 302.3.

119.    The Bellemeade and Mt. Storm facilities produce, use, or store ammonia, which is a hazardous substance within the meaning of CERCLA Section 103(c), 42 U.S.C. § 9603(c).

120.    Ammonia has a reportable quantity of 100 pounds. 40 C.F.R. § 302.4.

121.    As summarized in Exhibit 6, and described above, Defendant failed to immediately notify the NRC of the Bellemeade Release and the Mt. Storm Release of reportable quantities of ammonia.

122.    Each failure to immediately notify the NRC of these releases is a separate violation of Section 103(a) of CERCLA, 42 U.S.C. § 9603(a).

123.    Pursuant to Section 109 of CERCLA, 42 U.S.C. § 9609(a), Defendant is liable for civil penalties of up to $37,500 per day for each violation for all violations occurring on or after January 12, 2009 through November 2, 2015, and $57,317 per day for each violation that occurred after November 2, 2015.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, the United States of America and the Commonwealth of Virginia respectfully pray that this Court:

1.      Permanently enjoin Defendant from discharging pollutants except as expressly authorized by the CWA and the limitations and conditions of applicable NPDES permits.

2.      Order Defendant to take all necessary steps to comply with the CWA, SWCL, EPCRA/CERCLA, and the implementing regulations for those statutes, as well as with the limitations and conditions of the applicable NPDES permits.

3.      Assess civil penalties against Defendant up to $37,500 per day for each violation of the CWA that occurred on or after January 12, 2009 through November 2, 2015, and up to $54,833 per day for each violation of the CWA that occurred after November 2, 2015.

4.      Assess civil penalties against Defendant of up to $32,500 per day for each day of violation in the Commonwealth of Virginia pursuant to Va. Code § 62.1-44.32.

5.      Assess civil penalties against Defendant up to $37,500 per day for each violation of the EPCRA that occurred on or after January 12, 2009 through November 2, 2015, and up to $57,317 per day for each violation of the EPCRA that occurred after November 2, 2015.

6.      Assess civil penalties against Defendant up to $37,500 per day for each violation of the CERCLA that occurred on or after January 12, 2009 through November 2, 2015, and up to $57,317 per day for each violation of the CERCLA that occurred after November 2, 2015.

7.      Grant such other relief as the Court may deem appropriate.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA

   /s/_____

NATHANIEL DOUGLAS
Deputy Section Chief, Environmental Enforcement
Environment and Natural Resources Division

   /s/_____

LAURA A. THOMS
Senior Attorney, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Telephone: (202) 305-0260
Fax: 202-514-0097
Email: laura.thoms@usdoj.gov

OF COUNSEL:

DOUGLAS FRANKENTHALER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, Pennsylvania 19103

GRACIELA PENDLETON
Attorney-Adviser
U.S. Environmental Protection Agency
Office of Enforcement and Compliance Assurance
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

FOR THE UNITED STATES OF AMERICA


G. ZACHARY TERWILLIGER
United States Attorney
Eastern District of Virginia


   /s/ _____
ROBERT P. MCINTOSH
Assistant United States Attorney
Virginia State Bar No. 66113
United States Attorney's Office
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Fax:  (804) 771-2316
Email:  Robert.McIntosh@usdoj.gov

FOR THE COMMONWEALTH OF VIRGINIA


  /s/
_____
Mark R. Herring
Attorney General

Donald D. Anderson
Deputy Attorney General

Paul Kugelman, Jr.
Senior Assistant Attorney General
Environmental Section, Chief

David C. Grandis
Senior Assistant Attorney General
Office of the Attorney General
202 North 9th Street
Richmond, Virginia 23219
(804) 225-2741  (telephone)
(804) 786-2650  (fax)
*Counsel for the Commonwealth of Virginia*