IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and the COMMONWEALTH OF VIRGINIA, ) ) ) ) Plaintiffs, ) ) v. ) ) VIRGINIA ELECTRIC AND POWER ) COMPANY (d/b/a DOMINION ENERGY ) VIRGINIA) ) ) Defendant. ) | Civil Action No. 3:20-cv-177 |

### DECLARATION OF CHAD HARSH IN SUPPORT OF THE UNITED STATES AND THE COMMONWEALTH OF VIRGINIA'S MOTION TO ENTER CONSENT DECREE

I, Chad Harsh, pursuant to 28 U.S.C. § 1746, and based on my personal knowledge, review of the relevant records in this case, and factual discussions with professionals with the United States Environmental Protection Agency (EPA), state environmental agencies, and the United States Department of Justice (DOJ), declare and state the following:

1. I am a Life Scientist in EPA Region 3, assigned to the National Pollutant Discharge Elimination System (NPDES) Section of the Enforcement and Compliance Assurance Division.

2. I have a Bachelor of Science Degree in Environmental Science from Kutztown University and a Master of Science Degree in Biology from California University of Pennsylvania.

3. I have been employed by EPA for over 22 years, including over 19 years focusing on NPDES Enforcement.

4. I have completed inspector training to meet requirements of EPA Order 3500.1 and am credentialed as an Enforcement Officer.

5. As a Life Scientist within the NPDES Section, I conduct compliance investigations under the Clean Water Act (CWA). My duties include conducting inspections, gathering data, and preparing reports to make compliance determinations. Based on inspection reports and other data, I identify CWA violations and develop cases for prosecution. For cases involved in settlement discussions, I participate in settlement negotiations, develop and review proposed injunctive relief to ensure compliance with the CWA, and develop penalty calculations using the EPA Penalty Policy and BEN model. Part of my role is also to make recommendations to senior management on various matters, including whether the Region should enter into a proposed settlement.

6. During the 19 years that I have worked on NPDES enforcement, I have conducted investigations across a wide variety of industries, including construction, ready mixed concrete, natural gas production and coal mining. Through this experience I have gained significant understanding of various industrial operations, environmental compliance practices, treatment technologies, and experience in developing site specific and company-wide injunctive relief.

7. One of the cases to which I have been assigned is the compliance investigation of Dominion Energy Virginia. In addition to me, EPA Regions 3 staff, attorneys, and managers; EPA Headquarters staff; and state agency staff assisted in gathering and analyzing data and developing and reviewing injunctive relief. I served as the federal lead technical member of the case team.

## ENFORCEMENT BACKGROUND

8. On April 15, 2016 and January 5, 2017, EPA issued a CWA Section 308 information request to Dominion seeking CWA compliance information for its power generation

operations, including information about NPDES permit compliance and practices. Dominion submitted multiple responses to the information requests.

9. On March 31, 2016, EPA conducted an inspection of the Dominion Bellemeade Power Station due to a release of anhydrous ammonia. EPA collected information regarding this release along with the facility's hazardous chemical storage reporting requirements. On May 4, 2017, EPA sent the Dominion Mount Storm Power Station a combined CAA Section 114 and CERCLA 104(e) Information Request Letter due to a release of anhydrous ammonia. EPA collected information regarding this release along with the facility's hazardous chemical storage reporting requirements.

10. Following the document review, negotiations lasted over two and a half years. Both sides were represented by experienced counsel. Throughout the negotiations, the United States and the Virginia Department of Environmental Quality (DEQ) actively engaged in discussions with Dominion to discuss settlement terms, meeting in-person with Dominion representatives on multiple occasions. Numerous technical discussions and exchanges occurred over the course of negotiations. Every provision of the CD was subject to intense scrutiny, and many elements were contested and extensively negotiated.

## EPA'S EVALUATION OF SETTLEMENT TERMS

11. The proposed CD requires that Dominion pay a total of $1.4 million in penalty, $410,000 to the United States and $990,000 to the State.

12. EPA's calculation of the civil penalty amount is based on the Interim Clean Water Act Settlement Penalty Policy (CWA Penalty Policy), available at http://www2.epa.gov/enforcement/interim-clean-water-act-settlement-penalty-policy, and the Enforcement Response Policy for Sections 304, 311 and 312 of EPCRA and Section 103 of CERCLA, available at: https://www.epa.gov/sites/production/files/documents/epcra304.pdf,

which provide a methodology for calculating penalties in settlement of civil judicial cases. The two main components of the penalty calculation are economic benefit and gravity. The economic benefit component is the benefit gained by a company from failing to implement measures necessary to achieve compliance. Essentially, this is a calculation of the costs, both avoided and delayed, that should have been spent by a company to comply with environmental law. The gravity component is calculated to quantify the gravity of the violations as they relate to the underlying requirement. The factors considered include the significance of the violation, harm to human health and the environment, and the number of violations.

13. EPA worked closely with Virginia DEQ to determine the total appropriate penalty amount for settlement. The final agreed upon civil penalty of $1.4 million was the result of intense negotiations and took into account all of the factors I described above. The payment of a $1.4 million dollar penalty exceeds the economic benefit received by Dominion and includes a full recovery of the gravity of harm calculated using EPA's Penalty Policies.

14. In light of these factors, EPA believes that the penalty amount in the proposed decree is fair and reasonable.

15. The injunctive relief portion of the Dominion CD includes five components: (1) EMS Audit and Implementation, (2) Third-Party Environmental Audit, (3) Internal Environmental Audits, (4) Seep Identification and Mitigation, and (5) Training. These measures, taken collectively, create a disciplined framework for Dominion to achieve and maintain compliance.

16. EPA has thoroughly evaluated the proposed CD to ensure that the injunctive relief will correct the underlying practices that led to Dominion's violations and that the penalty is consistent with EPA policy.

17. Specific provisions of the injunctive relief were evaluated throughout negotiations by technical staff and attorneys with EPA who have many years of experience developing and negotiating similar settlements. The final decree was reviewed by several layers of EPA Region 3, and EPA Headquarters enforcement managers to concur that the settlement was appropriate and consistent with EPA policy.

18. Throughout the negotiation process, Virginia DEQ participated in the negotiations and provided expert technical evaluation of the injunctive relief. The state agrees that the proposed CD provides an appropriate framework for compliance and is in the public interest.

19. EPA believes the proposed CD is fair and reasonable and provides a strong framework for Dominion to ensure compliance with its environmental obligations.

20. After careful review and consideration of the comment received, EPA continues to believe that the proposed CD is fair and reasonable, includes suitable injunctive relief and an appropriate civil penalty.

21. I, Chad Harsh, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed the 29th day of June 2020 in Lancaster, Pennsylvania.

Chad Harsh
Life Scientist
EPA Region 3