**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| UNITED STATES OF AMERICA and the COMMONWEALTH OF VIRGINIA,  )<br><br>Plaintiffs,  )<br><br>v.  )<br><br><br><br>VIRGINIA ELECTRIC AND POWER COMPANY (d/b/a DOMINION ENERGY VIRGINIA)  )<br><br>Defendant.  )<br> | CONSENT DECREE |

## TABLE OF CONTENTS

I.      BACKGROUND ........................................................................................... 1

II.     JURISDICTION AND VENUE ................................................................... 4

III.    APPLICABILITY ........................................................................................ 5

IV.     DEFINITIONS ............................................................................................. 7

V.      CIVIL PENALTY ...................................................................................... 11

VI.     COMPLIANCE REQUIREMENTS ......................................................... 13

VII.    INJUNCTIVE RELIEF ............................................................................. 15

VIII.   REPORTING REQUIREMENTS ............................................................. 24

IX.     STIPULATED PENALTIES ..................................................................... 27

X.      FORCE MAJEURE ................................................................................... 31

XI.     DISPUTE RESOLUTION ......................................................................... 33

XII.    INFORMATION COLLECTION AND RETENTION ............................ 36

XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ................. 38

XIV.    COSTS ........................................................................................................ 40

XV.     NOTICES ................................................................................................... 40

XVI.    RETENTION OF JURISDICTION .......................................................... 42

XVII.   MODIFICATION ....................................................................................... 42

XVIII.  TERMINATION ......................................................................................... 43

XIX.    PUBLIC PARTICIPATION ...................................................................... 44

XX.     SIGNATORIES/SERVICE ........................................................................ 44

XXI.    INTEGRATION ......................................................................................... 45

i

**XXII.  FINAL JUDGMENT** ................................................................................ **45**

**XXIII. APPENDICES** ........................................................................................ **45**

# I. **BACKGROUND**

A.     Concurrent with the Date of Lodging of this Consent Decree, Plaintiffs, the

United States of America, on behalf of the United States Environmental Protection Agency

("EPA"), and the Commonwealth of Virginia, by and through the Department of Environmental

Quality ("DEQ" or the "State") have filed a Complaint in this action against Defendant Virginia

Electric and Power Company (d/b/a Dominion Energy Virginia) ("Defendant" or "Dominion")

pursuant to the following statutes: (1) Sections 309(b) and (d) of the Federal Water Pollution

Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. §§ 1319(b), and (d); and, (2) the Virginia

State Water Control Law ("SWCL"), Va. Code §§ 62.1-44.2 through 62.1-44.34:28.  The

Complaint alleges that the Defendant has violated the CWA and SWCL, including conditions

and limitations of National Pollutant Discharge Elimination System ("NPDES") permits issued

to them by the State pursuant to the EPA-approved permit program under Section 402 of the

CWA, 33 U.S.C. § 1342, and Va. Code § 62.1-44.15.  The Complaint also alleges State only

violations under the SWCL at one of Defendant's Facilities.  Additionally, the Complaint alleges

Federal only violations at two of Defendant's Facilities, under Section 103 of the Comprehensive

Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9603, and

Section 304 of the Emergency Planning and Community Right-to-Know Act ("EPCRA"), 42

U.S.C. § 11004, by failing to immediately report releases of reportable quantities ("RQ") of a

CERCLA hazardous substance and EPCRA extremely hazardous substance ("EHS") into the

environment.

B.     Defendant does not admit any liability to the United States, the State, any

governmental body, or any other organization or person arising out of the transactions or

1

occurrences alleged in the Complaint nor does Defendant admit any fact or legal conclusion alleged in the Complaint.

C.     Defendant, with the assistance of an environmental management system ("EMS") consultant ("EMS Consultant"), has developed a companywide EMS, embodied in an EMS Manual, which Defendant submitted to Plaintiffs on February 23, 2018.  Plaintiffs reviewed the EMS Manual and supporting documents, and EPA, after consultation with the State, notified Defendant that the EMS Manual was consistent with EPA's "Compliance Focused Environmental Management System Enforcement Agreement Guidance" ("EPA EMS Guidance") (Appendix A).

D.     Specifically, the EMS Manual was prepared in reliance on a Third-Party EMS Gap Analysis, which was submitted to Plaintiffs for review in the form of a Gap Analysis Report for Defendant's Power Generation business segment on February 23, 2018.

E.     The Gap Analysis Report contained: (i) a summary of the internal environmental audit process, including any obstacles encountered in performing such audits; (ii) detailed findings on Defendant's environmental management and compliance practices and processes, including the basis for each finding and each area of concern identified; (iii) identification of any areas of concern addressed during the audit; and (iv) recommendations for resolving any area of concern or steps necessary to ensure that Defendant's environmental policies and practices satisfy the requirements of the EPA EMS Guidance. The Gap Analysis was prepared to evaluate if Defendant's current EMS conformed with EPA's EMS Guidance, was properly developed, implemented, and maintained, and identify any areas for improvement.

F.     Additionally, Defendant has a long-standing Internal Environmental Audit

Program ("IEAP"), which is regularly updated, most recently in December 2017. The IEAP was developed to provide a systematic, and periodic review of the status of environmental regulatory compliance at all Defendant's facilities and is designed to conform to Performance Standards included in the Board of Environmental Health and Safety Auditors Certification, "Standards for the Professional Practice of Environmental, Health, and Safety Auditing."

G.      Following episodic releases of ammonia to the air at Defendant's Bellemeade Power Station on November 26, 2015 and Mt. Storm Power Station on March 15, 2017, Defendant updated its EPCRA Release Standard Operating Procedures and related incident reporting procedures. Defendant further conducted facility-specific training on EPCRA release reporting obligations, which included specific focus on ammonia operations associated with nitrogen oxide air pollution control systems. Defendant submitted its EPCRA Release SOPs to EPA.

H.      On July 21, 2017, the Virginia Department of Game and Inland Fisheries ("DGIF") identified an area of groundwater seepage along the James River shoreline adjacent to Defendant's Chesterfield Power Station and subsequently notified both DEQ and Defendant of the same. Defendant investigated and later determined that the groundwater seepage identified by DGIF, which contained elevated concentrations of constituents and was daylighting to the James River, originated from an existing coal pile ("Eastern Shoreline Seeps"). In addition, on May 11, 2018, Dominion self-reported to DEQ its observation, at low tide, of a small area of groundwater seepage south of a coal ash impoundment ("Upper Ash Pond Seep") at the Chesterfield Power Station, which contained elevated concentrations of constituents and was daylighting along the James River shoreline.

3

I.      Dominion has taken actions, with DEQ's direction and approval, to characterize and mitigate the Eastern Shoreline Seeps, including installation of a groundwater interceptor trench and collection system. The Upper Ash Pond is subject to closure by removal pursuant to a DEQ solid waste permit, which would include any required groundwater corrective action.

J.      DEQ is the regulatory entity addressing the Eastern Shoreline Seeps and Upper Ash Pond Seep, solely under State law.

K.      On April 15, 2016, EPA issued to Defendant an Information Request under Section 308 of the CWA, 33 U.S.C. § 1318, concerning activities at Defendant's Possum Point Facility. Defendant provided numerous responsive documents to the request. Subsequently, EPA and Defendant had several meetings and discussions about the responses, and a second 308 Information Request was issued to Defendant on January 5, 2017. EPA, Defendant and DEQ held multiple meeting and discussions, exchanged documents and information, and ultimately reached a resolution to the alleged violations contained in the Complaint, which is embodied in this Consent Decree.

L.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation among the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II.   <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over the Parties and over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, 1355, and 1367; Section 309(b) of the Clean Water

4

Act, 33 U.S.C. § 1319(b); Section 109 of CERCLA, 42 U.S.C. § 9609; and Section 325 of EPCRA, 42 U.S.C. § 11045.

2.      The Parties agree that venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1391(b) and (c) and 1395(a), as well as Section 309(b) of the Clean Water Act, 33 U.S.C. § 1319(b) and Section 109(c) of CERCLA, 42 U.S.C. § 9609(c).

3.      For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and consents to venue in this judicial district.

4.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, Section 109 of CERCLA, 42 U.S.C. § 9609, Section 325 of EPCRA, 42 U.S.C. § 11045, and Virginia Code §§ 62.1-44.2 through 62.1-44.34.28.

## III.      APPLICABILITY

5.      The provisions of this Consent Decree apply to and are binding upon the United States, the State, Defendant, and Defendant's successors and/or assigns, except as otherwise set forth herein.

6.      Defendant hereby agrees that it shall be bound to perform duties scheduled to occur by this Consent Decree prior to the Effective Date.  In the event the United States withdraws or withholds consent to this Consent Decree before entry, or the Court declines to enter this Consent Decree, then the preceding requirement to perform duties scheduled to occur before the Effective Date shall terminate.

7.      No transfer of ownership or operation of any Facility, or any portion thereof,

whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Consent Decree are implemented. From the date of lodging of this Consent Decree until its termination, at least thirty (30) Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the State, EPA, the United States Attorney for the Eastern District of Virginia, and the United States Department of Justice, in accordance with Section XV of this Consent Decree (Notices). Any attempt to transfer ownership or operation of any Facility, or any portion thereof, without complying with this Paragraph constitutes a violation of this Consent Decree. In the event of any such transfer of ownership or other interest, neither Defendant nor the transferee will be required to undertake any further EMS-related or IEAP-related obligations with respect to the transferred Facility, but Defendant will not be released from other obligations of this Consent Decree unless: (i) EPA, after consultation with the State, determines that the transferee has the technical and financial ability to assume these obligations and liabilities; (ii) the United States and State have agreed in writing to release Defendant from the obligations and liabilities; (iii) the United States, State and the transferee have jointly moved to substitute the transferee as Defendant to this Consent Decree; and (iv) the Court has approved the substitution. The transferee shall apply for modification and/or transfer of any applicable NPDES Permit under applicable law.

8.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

6

## IV. **DEFINITIONS**

9.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.     "Applicable Law" shall mean the Clean Water Act ("CWA"), Virginia's State Water Control Law ("SWCL"), and relevant implementing regulations.

b.     "Coal Ash Impoundment Facility" shall mean the Bremo, Chesapeake Energy Center, Chesterfield, and Possum Point Fixed Facilities.

c.     "Complaint" shall mean the complaint filed by the United States and the State in this action concurrent with the lodging of this Consent Decree.

d.     "Consent Decree" or "Decree" or "CD" shall mean this Decree and all appendices attached hereto.

e.     "Daily Violation" shall mean (i) any exceedance of a maximum daily discharge limitation, as determined under applicable state or federal law, for any parameters set forth in NPDES permits applicable to any Facilities, which is identified by a DMR Sample, or (ii) any failure to attain a minimum daily discharge limitation for pH set forth in NPDES permits or, alternatively, compliance orders applicable to any Facilities, as determined under applicable state or federal law, which is identified by a DMR Sample.

f.     "Day" or "day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day

7

would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day, except as otherwise provided in Paragraph 50.

       g.    "Defendant" or "Dominion" shall mean Virginia Electric and Power Company (d/b/a Dominion Energy Virginia).

       h.    "Discharge Monitoring Report Sample" or "DMR Sample" shall mean a sample taken in accordance with approved test procedures under 40 C.F.R. Part 136.

       i.    "Effective Date" shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

       j.    "Effluent Limit Violation" shall mean a Daily Violation or a Monthly Violation.

       k.    "EMS Audit" shall mean the audit conducted by the EMS Auditor pursuant to Paragraph 27 of this Consent Decree.

       l.    "EMS Auditor" shall mean the independent third-party environmental consultant approved by EPA, in consultation with the State, pursuant to Paragraphs 25 and 26 of this Consent Decree, who shall be contracted by Defendant to conduct the EMS Audit pursuant to this Consent Decree.

       m.    "EMS Audit Report" shall mean the report developed by the EMS Auditor after completion of the EMS Audit pursuant to Paragraph 27 of this Consent Decree.

       n.    "EMS Consultant" shall mean the independent third-party environmental consultant previously approved by EPA to perform the Gap Analysis and prepare the EMS Manual, which was approved by EPA, after consultation with the State.

8

o.    "EMS Manual" shall mean the document that describes and documents the integrated EMS developed for the Defendant, which was fully implemented by the Power Generation business segment as of January 1, 2019, and has been approved by EPA.

p.    "Environmental Audit Report" or "EA Report" shall mean the report developed by the Environmental Audit Consultant after completion of the Environmental Audit pursuant to Paragraph 32 of this Consent Decree.

q.    "Environmental Audit Consultant" or "EA Consultant" shall mean the independent third-party environmental consultant approved by EPA, in consultation with the State, pursuant to Paragraphs 29 and 30 of this Consent Decree, who shall be contracted by Defendant to conduct the Third-Party Environmental Audit pursuant to this Consent Decree.

r.    "Environmental Management System" or "EMS" refers to the integrated environmental compliance system created by Defendant and its EMS Consultant and approved by EPA as described in Section I, Paragraphs C, D and E, to standardize and formalize practices and programs used to maintain, track, and improve environmental performance.

s.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

t.    "EPCRA Release Standard Operating Procedures" or "Release SOPs" shall mean the EPCRA Facility-specific SOPs relating to training and compliance obligations under Section 103 of CERCLA and Section 304 of EPCRA, as described in Paragraphs 36-41.

u.    "EPCRA Facility" shall mean the Defendant's Mount Storm, West Virginia, Facility.

9

v. "Facility" refers to a Fixed Facility, EPCRA Facility and Stormwater Facility, as used in this Consent Decree.

w. "Fixed Facility" shall mean the current or former power generation asset locations and associated or contiguous operations identified in Appendix B to this Consent Decree.

x. "Monthly Violation" shall mean any exceedance, as determined by a DMR Sample, of an average monthly discharge limitation for any parameters set forth in NPDES permits or, alternatively, compliance orders applicable to any Facility.

y. "NOVs" shall mean, for violations or any noncompliance that may impact water quality, notices of violation under Applicable Law.

z. "NPDES" shall mean the National Pollutant Discharge Elimination System defined in 40 C.F.R. § 122.2, applicable State regulations and any state-issued NPDES permit.

aa. "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral.

bb. "Parties" shall mean the United States, the State, and Defendant.

cc. "Power Generation business segment" or "PGBS" shall mean Defendant's business organizations that operate electric power generating stations, not including nuclear power stations, in Virginia as well as their Virginia based construction locations subject to the CWA or SWCL. At a minimum, PGBS shall include Fixed Facilities and Stormwater Facilities.

dd.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

ee.     "State" shall mean the Commonwealth of Virginia.

ff.     "Stormwater Facility" shall mean an operation of Defendant's Power Generation business segment in Virginia typically consisting of construction activities that require a stormwater NPDES Permit.

gg.     "Third-Party Environmental Audit" or "Environmental Audit" or "EA" shall mean the EA required by Paragraphs 31-33 of this Consent Decree.

hh.     "United States" shall mean the United States of America, acting on behalf of EPA.

## V.  CIVIL PENALTY

10.     Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay a total of $1,400,000 as a civil penalty to the United States and the State.

11.     $410,000 of the civil penalty shall be paid to the United States and $990,000 of the civil penalty shall be paid to the Commonwealth of Virginia.

12.     Defendant shall make any payments to the United States required by this Consent Decree at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions provided to Defendant by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Eastern District of Virginia after the Effective Date.  The payment instructions provided by the FLU shall include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

11

Amanda B. Tornabene
Vice President, Environmental Services
Dominion Energy Services, Inc.
5000 Dominion Boulevard
Glen Allen, VA 23060
Amanda.b.tornabene@dominionenergy.com

and

Clay T. Burns
Senior Counsel, Law Department
Dominion Energy Services, Inc.
120 Tredegar St.
Richmond, VA 23219
clay.t.burns@dominionenergy.com

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on

its behalf by providing written notice of such change to the United States in accordance with

Section XV (Notices).  At the time of payment, Defendant shall send notice of payment to: (i)

EPA via email at CINWD_AcctsReceivable@epa.gov AND via regular mail at U.S. EPA

Cincinnati Finance Office, MS: WG-32B26 Martin Luther King Drive, Cincinnati, Ohio 45268;

(ii) EPA via email to the U.S. EPA Regional Hearing Clerk at R3_Hearing_Clerk@epa.gov; (iii)

the United States via email or regular mail in accordance with Section XV (Notices); and (iv) the

State in accordance with Section XV (Notices).  Such notice shall state the Defendant's name,

street/P.O. Box address, email address and telephone number; the name of the case; the docket

number or civil action number of the case; the Consolidated Debt Collection System ("CDCS")

Number and DOJ case number 90-5-1-1-11859; the amount of the payment; and the method of

payment.

13.     Defendant shall make payment to the Commonwealth of Virginia under this

Section by certified or cashier's check made payable to the "Treasurer of Virginia."  Payment

shall be mailed to: Receipts Control, Department of Environmental Quality, PO Box 1104, Richmond, Virginia 23218.

14.     Defendant shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section IX (Stipulated Penalties) in calculating its federal, state, or local income tax.

## VI.  **COMPLIANCE REQUIREMENTS**

15.     This Consent Decree in no way affects or relieves Defendant of its responsibility to comply with applicable federal, state, and local laws, regulations, and permits.

16.     Defendant shall perform the work required by this Consent Decree in compliance with the requirements of all applicable federal, state, and local laws, regulations, and permits. This Consent Decree shall not be considered as a permit issued pursuant to any federal, state, or local statute or regulation.

17.     Approval of Deliverables.  Except for the State only approvals described in Paragraphs 36 and 37 of this CD, after review of any plan, report, or other item that is required to be submitted and approved pursuant to this Consent Decree, EPA, after consultation with the State, shall in writing: (a) approve the submission; (b) approve the submission with specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

18.     If the submission is approved pursuant to Paragraph 17(a), Defendant shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved.  If the submission is conditionally approved or approved only in part, pursuant to Paragraph 17(b) or 17(c), Defendant

13

shall, upon written direction from EPA, after consultation with the State, take those actions required by the approved plan, report, or other item that EPA, after consultation with the State, determines are technically severable from any disapproved portions, subject to Defendant's right to dispute the specified conditions or EPA's disapproval of the disapproved portions, under Section XI of this Consent Decree (Dispute Resolution).

19.     If the submission is disapproved in whole or in part pursuant to Paragraph 17(c) or 17(d), Defendant shall, within 45 Days of receipt of disapproval or within such other timeframe or upon such other schedule as the Parties agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs.  If the resubmission is approved in whole or in part, Defendant shall proceed in accordance with the preceding Paragraph.

20.     Any stipulated penalties applicable to the original submission, as provided in Section IX of this Consent Decree (Stipulated Penalties), shall accrue during the 45-Day period or other specified period, but shall not be payable unless the resubmission is untimely or is materially disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Consent Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

21.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA, after consultation with the State, may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution under Section XI and the right of EPA or the State to seek stipulated

14

penalties as provided in the preceding Paragraph.

22.     Permits.  Where any compliance obligation under this Consent Decree requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section X of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

23.     Defendant shall make copies of the Consent Decree available to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Consent Decree.  Defendant shall also provide copies of this Consent Decree to contractors with responsibilities under this Consent Decree.  Defendant shall condition any contract for the performance of work required under this Consent Decree upon performance of the work in conformity with the terms of the Decree.

## VII.  INJUNCTIVE RELIEF

### EMS Audit

24.     Defendant developed and EPA, after consultation with the State, approved an EMS Manual for implementing Defendant's EMS.

25.     Defendant has retained and EPA, after consultation with the State, has approved an EMS Auditor to complete an Environmental Management System Audit and develop an Environmental Management System Audit Report ("EMS Audit Report") for Defendant's Power

Generation business segment. Defendant shall bear all costs associated with the EMS Auditor duties under this Consent Decree, cooperate fully with the EMS Auditor, and provide the EMS Auditor with access to all records, employees, contractors, and Facilities that the EMS Auditor deems reasonably necessary to effectively perform the duties described in in this Consent Decree.

26.     Selection of Replacement EMS Auditor. If at any time Defendant seeks to replace the EMS Auditor, then Defendant shall submit to EPA and the State a list of two or more proposed environmental consultants to serve as EMS Auditor, along with: the name, affiliation, and address of the proposed consultants; information demonstrating how each proposed consultant satisfies EMS auditor qualification requirements of Table 1 in ISO 19011 (First Edition, 2002-10-01); information demonstrating how each proposed consultant has experience in developing and implementing an EMS; information demonstrating that the team proposed to conduct the EMS Audit, in composite, has a working process knowledge of the Defendant's operations or similar operations, and has a working knowledge of federal and state environmental requirements which apply to the Facilities; and descriptions of any previous work contracts, or financial relationship with Defendant.

a.     EPA, in consultation with the State, shall notify Defendant of whether it approves any consultant(s) on the list submitted by Defendant. If EPA, after consultation with the State, does not approve any of the proposed consultants on Defendant's list, then Defendant shall submit another list of proposed consultants to EPA and the State within 30 Days of receipt of EPA's written notice of disapproval. If after Defendant has submitted a third list of consultants, which must be submitted within 30 Days of receipt of written notice that EPA has not approved any of the consultants on Defendant's second list, the Parties are unable to agree on an EMS

16

Auditor, the Parties agree to resolve the selection of the EMS Auditor through the Dispute Resolution process in Section XI of this Consent Decree.

b.     Within 10 Days after receipt of EPA's approval, Defendant shall select one consultant from those approved by EPA and shall enter into a contract with the consultant to perform all duties described in Paragraphs 25 and 27. In the event the consultant(s) approved by EPA are no longer available or willing to accept the work described herein when notified of its selection by Defendant, then Defendant shall, within 30 Days after receipt of EPA's approval pursuant to Paragraph 26(a), select another consultant approved by EPA and enter into the contract to perform all duties described herein.   Defendant shall ensure that the EMS Auditor performs the duties described herein, and that Defendant's contract with the EMS Auditor shall require the EMS Auditor to perform such duties.

27.     <u>EMS Audit and EMS Audit Report</u>. Defendant shall ensure that the EMS Auditor:

a.     Conducts and completes an EMS Audit for Defendant's Power Generation business segment no sooner than 180 Days and no later than 545 Days after the Date of Lodging of this CD. The EMS Audit shall be conducted in accordance with ISO 19011 (First Edition, 20002-10-01), using as the EMS metric EPA's "*Compliance-Focused Environmental Management System-Enforcement Agreement Guidance*" ("EPA EMS Guidance"), Appendix A to this Consent Decree, as well as the EMS Manual, and shall determine the following:

(i)     Whether there is a defined system, subsystem, program, or planned task for each respective element of the EPA EMS Guidance;

(ii)     To what extent the system, subsystem, program, or task has been implemented, and is being maintained;

17

(iii)    The adequacy of each Facility's internal self-assessment procedures for programs and tasks;

(iv)    Whether Defendant is effectively communicating environmental requirements to affected parts of the organization, or those working on behalf of the organization;

(v)    Whether Defendant is ensuring that contractors and consultants are fully trained to comply with and are complying with any environmental obligations associated with their work for Defendant;

(vi)    Whether further improvements should be made to Defendant's written requirements or procedures to better achieve compliance with all environmental laws; and

(vii)    Whether there are deviations from Defendant's written requirements or procedures in practice.

b.    Within 90 Days of completion of the EMS Audit, prepares an EMS Audit Report describing the results of the EMS Audit, including recommendations necessary for Dominion to improve its environmental management policy and processes and ensure it is consistent with EPA's EMS Guidance.

(i)    The EMS Audit Report shall contain: (i) a summary of the audit process, including any obstacles encountered; (ii) detailed findings, including the basis for each finding and each area of concern identified; (iii) identification of any areas of concern addressed during the audit; (iv) recommendations for resolving any area of concern or steps necessary to ensure that Defendant's environmental policies and practices achieve the requirements of the EPA EMS Guidance and EMS Manual; and (v) certification that the EMS Audit was conducted

18

in accordance with the provisions of this Consent Decree.

(ii)     The EMS Audit Report shall be provided to EPA and the State upon completion. This report shall be provided to EPA and the State directly from the EMS Auditor.  Defendant shall have 30 Days from the date the EMS Audit Report is provided to EPA and the State to provide comments on the report to EPA and the State.  EPA, following consultation with the State, shall have the opportunity to review and comment on the EMS Audit Report within sixty (60) days of receipt from the EMS Auditor.

28.     EMS Audit Report Implementation. Within 270 Days of its receipt, Defendant shall complete full implementation of the recommendations of the EMS Audit Report and provide a certification in the form identified in the Notice provision of this CD to EPA and the State confirming completion of the EMS Audit Report implementation.  An extension of time to complete implementation may only be granted in writing by EPA, after consultation with the State, upon written request by Defendant.

### Third-Party Environmental Audit

29.     Defendant has retained and EPA, after consultation with the State, has approved an environmental consultant to be the EA Consultant.

30.     Selection of Replacement EA Consultant. If at any time Defendant seeks to replace the EA Consultant, then Defendant shall submit to EPA and the State a list of two or more proposed consultants to serve as EA Consultant, along with: the name, affiliation, and address of the proposed consultants; information demonstrating how each proposed consultant has qualifications to perform environmental audits; information demonstrating how each proposed consultant has experience in performing an environmental audit; information

19

demonstrating that the team proposed to conduct the environmental audit, in composite, has a working process knowledge of the Defendant's operations or similar operations, and has a working knowledge of federal and state environmental requirements which apply to Defendant; and descriptions of any previous work contracts, or financial relationship with Defendant.

        a.     EPA, in consultation with the State, shall notify Defendant of whether it approves any consultant(s) on the list. If EPA, after consultation with the State, does not approve any of the proposed consultants on Defendant's list, then Defendant shall submit another list of proposed consultants to EPA and the State within 30 Days of receipt of EPA's written notice. If after Defendant has submitted a third list of consultants, which must be submitted within 30 Days of receipt of written notice that EPA has not approved any of the consultants on Defendant's second list, the Parties are unable to agree on an EA Consultant, the Parties agree to resolve the selection of the EA Consultant through the Dispute Resolution process in Section XI of this Consent Decree.

        b.     Within 10 Days after receipt of EPA's approval, Defendant shall select one consultant from those approved by EPA and shall enter into a contract with the consultant to perform all duties described in this Consent Decree. In the event that the consultant(s) approved by EPA is no longer available or willing to accept the work described herein when notified of their selection by Defendant, then Defendant shall, within 30 Days after receipt of EPA's approval pursuant to Paragraph 30(a), select another consultant approved by EPA and enter into the contract to perform all duties described in herein.   Defendant shall ensure that the EA Consultant performs the duties described in this CD and that Defendant's contract with the EA Consultant shall require the EA Consultant to perform such duties

31.     The EA Consultant shall conduct a Third-Party Environmental Audit ("EA or "Environmental Audit") of the Chesapeake Energy Center, Chesterfield, Clover, Bremo, Possum Point, Virginia City Hybrid Energy Center, and Yorktown Fixed Facilities as well as three (3) randomly chosen stormwater NPDES permitted construction locations owned and operated by Defendant ("Environmental Audit Facilities").   The Environmental Audit shall be completed within 270 Days of the Effective Date and shall be completed in accordance with acceptable environmental audit industry standards.  The Environmental Audit shall evaluate compliance with all applicable NPDES permits at the Environmental Audit Facilities and, at a minimum, with the Applicable Laws.

32.     An EA Report shall be prepared by the EA Consultant detailing the results of the Environmental Audit, including, at a minimum: (1) the environmental audit process and protocols followed; (2) the sites and locations audited; (3) the files reviewed; (4) any data or samples obtained; (5) individuals interviewed; (6) all areas of non-compliance and concern; (7) recommendations; and (8) a plan and schedule to correct any non-compliance or area of concern identified.  The EA Report shall be provided to EPA and the State no later than 60 Days after completion of the Environmental Audit.  EPA, following consultation with the State, shall have an opportunity to review and comment on the EA Report within 60 Days of receipt from the EA Consultant.

33.     Responses and actions to fully address and correct any non-compliance or areas of concern identified by the EA Report shall be completed as expeditiously as possible and shall not take longer than 270 Days to complete after the submission of the EA Report, unless an extension of time is requested in writing by Defendant and granted by EPA in writing, after

21

consultation with the State.

## Internal Environmental Audits

34.      Defendant shall continue to implement its Internal Environmental Audit Program ("IEAP") and include an IEAP Report in the Semi-Annual report required by Section VIII of this Consent Decree.

35.      Each IEAP Report shall include: (1) the identification of any Facility audited within the most recent semi-annual period; (2) a summary of information reviewed to assess compliance with Applicable Law; (3) a statement as to whether there are, and a description of, any instances of non-compliance with Applicable Law; and if so, (4) description of and confirmation that corrective and/or preventive actions have been taken or are being implemented to address any instances of non-compliance with Applicable Law.

## State SWCL Injunctive Relief: Seep Identification and Mitigation

36.      Within 180 Days of lodging of this CD, in addition to inspections required by the EPA CCR Rule, 40 CFR Part 257, Subpart D, Virginia Solid Waste Management Regulations, 9 VAC 20-81, Virginia Impounding Structure Regulations, 4 VAC 50-20, and applicable permits, Defendant shall continue to conduct at least monthly site walk-downs required by applicable law or in accordance with best management practices, which must include at a minimum a visual inspection of adjacent shorelines at low-tide at its Coal Ash Impoundment Facilities ("CAIF"). Any seeps or surface expressions of groundwater observed to be discharging to surface waters at a CAIF shall be reported within 24 hours to the State in addition to any other legally required notifications.  Defendant shall then, in coordination and consultation with and as approved by the State, take action to determine whether further monitoring, characterization, or mitigation is

22

warranted.  If determined to be warranted, Defendant shall develop an appropriate corrective action plan for State review and approval.  After approval, Defendant shall implement the plan in accordance with its terms.

### State SWCL Seep Specific Injunctive Relief

37.     Defendant shall continue to implement the Seep Mitigation Plan ("SMP") submitted to the State to address the Eastern Shoreline Seeps at the Chesterfield Power Station. In implementing this plan, Defendant shall:

a.     Submit quarterly status reports to the State following implementation of the mitigation strategy describing the results of follow-up monitoring;

b.     Submit an annual review report to the State with each 4th quarter status report for three years that quantifies the success of the chosen mitigation method as well as effectiveness;

c.     Submit an evaluation to the State to occur no later than three years after installation of a remedy described in the SMP to include data analysis and trend analysis to evaluate the long-term effectiveness of the remedy; and

d.     Submit to the State a revised SMP within 90 days following a DEQ notification that the selected mitigation plan is not achieving the desired goal.

### EPCRA Release Training

38.     <u>EPCRA Release Training.</u> For the EPCRA Facility, within 120 Days of the Effective Date, Defendant shall conduct training on its Release SOPs for notifying the appropriate federal, state, and local emergency responders of a release of any hazardous substance or EHS exceeding the reportable quantity ("RQ") as required by the emergency release notification requirements of Section 103 of CERCLA, 42 U.S.C. § 9603, and Section 304 of EPCRA, 42 U.S.C. § 11004, and their implementing regulations at 40 C.F.R. Parts 302 and 355.

39.     Within 60 days of completing the training in accordance with Paragraph 38, Defendant shall develop and submit to EPA an Emergency Release Process Report ("the Release

SOPs Report"). The Release SOPs Report shall include a certification of completion of training, including a report on the dates of training and personnel trained.

40.     Between 365 Days and 425 Days after the submission of the Release SOPs Report, Defendant shall certify to EPA in writing that the Release SOPs are current, accurate and being implemented.

### Annual Training

41.     Defendant shall provide and require annual training for all individuals with environmental management responsibilities at any Facility, including, but not limited to: (a) Clean Water Act compliance; (b) applicable requirements in the EMS Manual; and (c) applicable obligations in this Consent Decree.

### VIII.   REPORTING REQUIREMENTS

### Semi-Annual Reports

42.     During the term of this Consent Decree, Defendant shall submit semi-annual reports to EPA and the State concerning compliance with the terms of this CD and Applicable Law. The semi-annual reports may be submitted in electronic format and shall be due at the end of the month following the end of each semi-annual period (i.e. by July 31 and January 31), starting with the first full semi-annual period after the Effective Date.  The semi-annual reports shall contain, at a minimum, the following:

a.     Information regarding any violation of Applicable Law at any Facility that occurred within the reporting period, including: (i) a summary of Effluent Limit Violations, including total number of Effluent Limit Violations; (ii) NOVs; (iii) unauthorized discharges; (iv) a summary of steps taken or planned steps to remedy the violations identified in (i) through

(iii); and (v) if applicable, proof of payment of civil or stipulated penalty under this Consent Decree or any state consent decree or consent order;

        b.      Certification of and any applicable rosters of training required under this Consent Decree;

        c.      Following completion of the EMS Audit required by this Consent Decree, a certification of material conformance with the elements of the EMS Manual, or, for any material nonconformance, an explanation of the cause of the nonconformance and remedial steps taken or to be taken;

        d.      The status of Consent Decree implementation, including the status of any problems encountered or anticipated, together with implemented or proposed solutions;

        e.      A description of any noncompliance with the requirements of this Consent Decree and an explanation of the noncompliance's likely cause and the remedial steps taken, or to be taken, to prevent or minimize such noncompliance;

        f.      The IEAP Report, required by Paragraph 35; and

        g.      A description of each Consent Decree violation for which Defendant has submitted to EPA an unresolved Force Majeure claim or intends to submit a Force Majeure claim pursuant to Section X of this Consent Decree.

### Other Reporting Requirements

43.    If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States and the State of such violation and its likely duration, in writing, within 7 Days of the day Defendant first becomes aware of the violation, and include an explanation of the violation's likely cause and of the remedial steps

taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the notification is due, Defendant shall so state in the notification. Defendant thereafter shall investigate the cause of the violation and submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the day Defendant becomes aware of the violation. Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section X of this Consent Decree (Force Majeure).

44.     Whenever any violation of this Consent Decree or of any Applicable Law or other event affecting Defendant's performance under this Consent Decree may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA and the State orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

45.     All reports shall be submitted to the persons designated in Section XV of this Consent Decree (Notices).

46.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

26

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

47.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligation required by Applicable Law, or by any other federal, state, or local law, regulation, permit, or other requirement.

48.     Any information provided pursuant to this Consent Decree may be used by the United States or the State in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## IX.  STIPULATED PENALTIES

49.     Defendant shall be liable for stipulated penalties to the United States and the State for violations as specified below, unless excused under Section X (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

50.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  If performance is satisfactorily completed, or if a violation ceases on a Saturday, Sunday, or federal holiday, the date of completion of performance and the date that the violation ceases shall be the date of actual completion or cessation, rather than the following business day.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

27

51. Any Plaintiff, in the unreviewable exercise of its discretion may reduce or waive stipulated penalties otherwise due to that Plaintiff under this Consent Decree.

52. Stipulated penalties shall continue to accrue as provided in Paragraph 50 during any Dispute Resolution under Section XI, but need not be paid until the following:

a. If the dispute is resolved by agreement or by a decision of EPA or the State that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owed, together with interest, to the United States and the State within 30 Days of the effective date of the agreement or the receipt of EPA's or the State's decision or order.

b. If the dispute is appealed to the Court and the United States or the State prevail in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, to the United States and the State within 60 Days of receiving the Court's decision or order, except as provided in subparagraph (c), below.

c. If any Party appeals the Court's decision, Defendant shall pay all accrued penalties determined to be owed, together with interest, within 15 Days of receiving the final appellate court decision.

53. If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States or the State from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

54. Subject to the provisions of Section XIII of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree

28

shall be in addition to any other rights, remedies, or sanctions available to the United States or the State for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

55.   Non-Compliance with Consent Decree. The following stipulated penalties shall accrue per violation per Day for each violation of any requirement of Paragraph 7 (transfer of Facilities); Section V (Civil Penalty); Section VI (Compliance Requirements); Section VII (Injunctive Relief); and Section XII (Information Collection and Retention) of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $750 per Day or portion thereof | 1st through 14th Day |
| $1,250 per Day or portion thereof | 15th through 30th Day |
| $2,500 per Day or portion thereof | 31st Day and beyond |

56.   Non-Compliance with Reporting Requirements. The following stipulated penalties shall accrue per violation per Day for each violation of the Reporting Requirements under Section VIII of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $250 per Day or portion thereof | 1st through 14th Day |
| $500 per Day or portion thereof | 15th through 30th Day |
| $1,000 per Day or portion thereof | 31st Day and beyond |

57.   Non-Compliance with NPDES Permit Limits. The following stipulated penalties shall accrue for each Effluent Limit Violation that occurs at any Facility after the Effective Date of this Consent Decree, except for any Daily Violation that is in compliance with an alternative limit identified in a State compliance order:

29

| Per Violation | Period of Noncompliance |
|---|---|
| $1,000 | Daily Violation |
| $3,000 | Monthly Violation |

58.     Defendant shall pay any stipulated penalty pursuant to this Consent Decree to the United States and the State within 30 Days of receiving a written demand by any Plaintiff. The Plaintiff making a demand for payment of a stipulated penalty shall simultaneously send a copy of the demand to the other Plaintiff. For tracking purposes, the United States, EPA, or the State, will send notice of any demand letter to: (i) EPA via email at CINWD_AcctsReceivable@epa.gov and via regular mail at U.S. EPA Cincinnati Finance Office, MS: WG-32B26 Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) EPA via email to the U.S. EPA Regional Hearing Clerk at R3_Hearing_Clerk@epa.gov.

59.     Defendant shall pay 50 percent of any stipulated penalty pursuant to Paragraphs 55 and 56 to the United States and 50 percent to the State, except that for stipulated penalties from violations that occur in West Virginia, Defendant shall pay the entire amount of the stipulated penalty to the United States and for any stipulated penalties related to violations of Paragraphs 36 or 37 Defendant shall pay the entire amount to the State.

60.     Defendant shall pay stipulated penalties owing to the United States pursuant to this CD in the manner set forth in Paragraph 12 and with the confirmation notices and transmittal letter information required by Paragraph 12, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid. Defendant shall pay stipulated penalties owing to the State pursuant to this Consent Decree in the manner set forth in Paragraph 13, except that the confirmation notice shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being

paid.

## X.  FORCE MAJEURE

61.     "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

62.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA and the State within 72 hours of when Defendant first knew that the event might cause a delay.  Within 7 Days thereafter, Defendant shall provide in writing to EPA and the State an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any

31

notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

63.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

64.     If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant in writing of its decision.

65.     If Defendant elects to invoke the dispute resolution procedures set forth in Section XI (Dispute Resolution) in response to EPA's determination in Paragraph 64, it shall do so no later than 20 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the

32

extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 61 and 62, above. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation of the affected obligation of this Consent Decree identified to EPA and the Court.

## XI. **DISPUTE RESOLUTION**

66.    Unless otherwise expressly provided for in this Consent Decree, the Dispute Resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States, EPA or the State to enforce any obligation of Defendant arising under this Consent Decree.

67.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Defendant sends the United States, EPA and the State a written Notice of Dispute. The Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed beyond 30 Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States, after consultation with the State, shall be considered binding unless, within 15 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

68.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution

33

procedures, within the time period provided in the preceding Paragraph, by serving on the United States, EPA and the State a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

69.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States, and shall be developed in consultation with State. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with Paragraph 71.

70.     An administrative record of the dispute shall be maintained by EPA and shall contain all Statements of Position, including supporting documentation, submitted pursuant to this Section.

71.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States and the State, in accordance with Section XV of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within 20 Days of receipt of the United States' Statement of Position pursuant to Paragraph 69. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly

34

implementation of this Consent Decree.

72.    The United States and/or the State shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

73.    <u>Standard of Review</u>

a.    <u>Disputes Concerning Matters Accorded Record Review</u>. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 68 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    <u>Other Disputes</u>. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 68, Defendant shall bear the burden of demonstrating that its position fulfills the terms, conditions, requirements, and objectives of this Consent Decree.

74.    The invocation of Dispute Resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 52. If

Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section IX (Stipulated Penalties).

## XII.   INFORMATION COLLECTION AND RETENTION

75.    The United States, the State, and their designated representatives, including attorneys, contractors, and consultants, shall have the right of entry onto any Facility under the ownership or control of the Defendant, at all reasonable times, upon presentation of credentials, to:

    a.    monitor the progress of activities required under this Consent Decree;

    b.    verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

    c.    obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants relating to Defendant's compliance with this Consent Decree;

    d.    obtain documentary evidence, including photographs and similar data, relating to Defendant's compliance with this Consent Decree; and

    e.    assess Defendant's compliance with this Consent Decree.

76.    Upon request, Defendant shall provide EPA and the State, or their authorized representatives, splits of any samples taken by Defendant relating to the Facilities' compliance with this Consent Decree.  Upon request, EPA and the State shall provide Defendant splits of any samples relating to the Facilities' compliance with this Consent Decree taken by EPA or the State.

77.    Until three (3) years after the termination of this Consent Decree, Defendant shall

retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in Defendant's or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree. The foregoing may be maintained electronically. This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States or the State, Defendant shall provide copies of any non-privileged documents, records, or other information required to be maintained under this Paragraph.

78.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States and the State at least 60 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States or the State, Defendant shall deliver copies of any such non-privileged documents, records, or other information to EPA or the State. After the expiration of the 60-Day period identified in this Paragraph, Defendant's obligations with respect to document retention under this Consent Decree shall terminate and Defendant shall be entitled to reinstate the application of its standard document retention policies.

79.     Defendant may assert that information required to be provided to the United States or the State under Paragraphs 77 and 78 of this Consent Decree is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Defendant asserts such a privilege, it shall provide the following: (a) the title of the document, record, or

37

information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Defendant.  However, no documents, records, or other information required to be created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

80.     Defendant may assert that information provided to the United States or the State under this Consent Decree is protected as Confidential Business Information ("CBI") by following the procedures set forth in 40 C.F.R. Part 2 and comparable state law.  The United States and the State will treat such materials in accordance with the applicable federal or state CBI regulations.

81.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XIII.   EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

82.     This Consent Decree resolves the civil claims of the United States and the State for the violations alleged in the Complaint filed in this action.

83.     The United States and the State reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 82. This Consent Decree shall not be construed to limit the rights of the United States or the State to

obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal or state laws, regulations, or permit conditions, except as expressly specified in Paragraph 82.

84.     In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, civil penalties, or other appropriate relief relating to the violations alleged in the Complaint, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 82 of this Section.

85.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States and the State do not, by their consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree shall result in compliance with provisions of the CWA, 33 U.S.C. § 1311, *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.  Application for construction grants, State Revolving Loan Funds, or any other grants or loans, or other delays caused by inadequate facility planning or plans and specifications on the part of Defendant shall

39

not be cause for extension of any required compliance date in this Consent Decree.

86.     This Consent Decree does not limit or affect the rights of Defendant or of the United States or the State against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

87.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third-party not party to this Consent Decree.

88.     By the execution of this Consent Decree, Defendant releases and shall hold harmless the United States and the State, and their instrumentalities, agents, and employees, in their official and personal capacities, of any and all liability or claims arising out of or otherwise related to the negotiations leading to this Consent Decree and all matters contained therein.

## XIV.  COSTS

89.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States and the State shall each be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due hereunder but not paid by Defendant.

## XV.  NOTICES

90.     Unless otherwise specified herein, whenever notifications, submissions, reports, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

40

<u>To the United States</u>:

By email:    eescdcopy.enrd@usdoj.gov
Re: DJ # 90-5-1-1-11859

By mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Re: DJ # 90-5-1-1-11859

<u>To EPA</u>:

By email:    harsh.chad@epa.gov

By mail:    Director, Office of Civil Enforcement
U.S. Environmental Protection Agency
Ariel Rios Building, 2241A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

and

NPDES Enforcement Branch Chief
U.S. EPA Region III
1650 Arch Street, 3WP42
Philadelphia, PA 19103

<u>To the Commonwealth of Virginia</u>:

By email:    Kristen.Sadtler@deq.virginia.gov

By mail:    Director, Division of Enforcement
PO Box 1105
Richmond, VA  23218

<u>To Defendant</u>:

By mail:    Amanda B. Tornabene
Vice President, Environmental Services
Dominion Energy Services, Inc.
5000 Dominion Boulevard
Glen Allen, VA 23060

41

Clay T. Burns
Senior Counsel, Law Department
Dominion Energy Services, Inc.
120 Tredegar St.
Richmond, VA 23219

By email:      Amanda.b.tornabene@dominionenergy.com
clay.t.burns@dominionenergy.com

91.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

92.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XVI.  RETENTION OF JURISDICTION

93.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections XI (Dispute Resolution) or XVII (Modification) or effectuating or enforcing compliance with the terms of this Decree.

## XVII.  MODIFICATION

94.    The terms of this Consent Decree, including any attached Appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.  Deadline extensions of less than 90 Days shall not be considered a material change to the Consent Decree requiring Court approval.

95.    Any disputes concerning modification of this Consent Decree shall be resolved

pursuant to Section XI of this Decree (Dispute Resolution); provided, however, that, instead of the burden of proof provided by Paragraph 73, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. __TERMINATION__

96.     After Defendant has completed the requirements of Paragraphs 24-33 (EMS Audit and Environmental Audit) of this Decree and has thereafter maintained satisfactory compliance with Section VI (Compliance Requirements), Section VII (Injunctive Relief), and Section VIII (Reporting Requirements) of this Consent Decree for a period of two years, and has paid the civil penalty and any accrued and demanded stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

97.     Following receipt by the United States and the State of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree. If the United States and the State agree that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

98.     If the United States and the State do not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section XI of this Consent Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination,

under Paragraph 68 of Section XI, until 30 Days after service of its Request for Termination.

## XIX.  PUBLIC PARTICIPATION

99.     This Consent Decree shall be lodged with the Court for a period of not less than

30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States

reserves the right to withdraw or withhold its consent if the comments regarding this Consent

Decree disclose facts or considerations indicating that this Consent Decree is inappropriate,

improper, or inadequate.  Defendant consents to entry of this Consent Decree without further

notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to

challenge any provision of the Consent Decree, unless the United States has notified Defendant

in writing that it no longer supports entry of the Consent Decree.

## XX.  SIGNATORIES/SERVICE

100.    Each undersigned representative of the Defendant, the Assistant Attorney General

for the Environment and Natural Resources Division of the Department of Justice, and the

undersigned representative of the State certifies that he or she is fully authorized to enter into the

terms and conditions of this Consent Decree and to execute and legally bind the Party he or she

represents to this document.

101.    This Consent Decree may be signed in counterparts, and its validity shall not be

challenged on that basis.  Defendant agrees to accept service of process by mail with respect to

all matters arising under or relating to this Consent Decree and to waive the formal service

requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any

applicable Local Rules of this Court including, but not limited to, service of a summons.

44

## XXI. INTEGRATION

102. This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXII. FINAL JUDGMENT

103. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

## XXIII. APPENDICES

104. The following appendices are attached to and part of this Consent Decree:

Appendix A: EPA EMS Guidance

Appendix B: Fixed Facilities

So Ordered This _20th_ Day of ___July___, 2020.

_____  /s/  *Rep*

Robert E. Payne
Senior United States District Judge

45

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

FOR THE UNITED STATES OF AMERICA

Date: 3/6/2020

NATHANIEL DOUGLAS
Deputy Section Chief
Environment Enforcement Section

Date: 3/6/2020

LAURA THOMS
Senior Attorney
Environment Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
Telephone: 202-305-0260
Fax: 202-514-0097
laura.thoms@usdoj.gov

46

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

FOR THE UNITED STATES OF AMERICA

G. ZACHARY TERWILLIGER
United States Attorney
Eastern District of Virginia

Date: *March 13, 2020*

ROBERT P. MCINTOSH
Assistant United States Attorney
Virginia State Bar No. 66113
919 East Main Street, Suite 1900
Richmond, Virginia 23219
Telephone: (804) 819-7404
Fax: (804) 771-2316
Email: Robert.McIntosh@usdoj.gov

47

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: 12/18/19

Susan Parker Bodine
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 12/2/19

Rosemarie Kelly
Director, Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 11/26/19

Mark Pollins
Director, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

Date: 11/25/2019

Graciela Garcia Pendleton
Attorney-Advisor, Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

48

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY

Date: 12·02·20/9

COSMO SERVIDIO
Regional Administrator
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

Date: 11 | 18 | 2019

CECIL RODRIGUES
Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

Date: 11/7/19

DOUGLAS FRANKENTHALER
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region III
1650 Arch Street
Philadelphia, PA 19103-2029

49

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

FOR THE COMMONWEALTH OF VIRGINIA

Date: _2 · 21· 20_          _David Grandis_

Mark R. Herring
Attorney General of Virginia

Donald D. Anderson
Deputy Attorney General

Paul Kugelman, Jr.
Senior Assistant Attorney General, Chief

David C. Grandis
Senior Assistant Attorney General

Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
(804) 225-2741 – telephone
(804) 786-2650 – facsimile

50

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States, et al. v. Virginia Electric and Power Company d/b/a Dominion Energy Virginia*

.

FOR DEFENDANT

Date: November 8, 2019 _____

Paul D. Koonce
President and Chief Operating Officer – Power Generation Group
Virginia Electric and Power Company

51

APPENDIX A

COMPLIANCE-FOCUSED
ENVIRONMENTAL MANAGEMENT SYSTEM ELEMENTS

1.    Environmental Policy

    a.    This policy, upon which the EMS is based, must clearly communicate management commitment to achieving compliance with applicable federal, state, and local environmental statutes, regulations, enforceable agreements, and permits (hereafter, "environmental requirements"), minimizing risks to the environment from unplanned or unauthorized releases of hazardous or harmful contaminants, and continual improvement in environmental performance. The policy should also state management's intent to provide adequate personnel and other resources for the EMS.

2.    Organization, Personnel, and Oversight of EMS

    a.    Identifies and defines specific duties, roles, responsibilities, and authorities of key environmental staff in implementing and sustaining the EMS (e.g., could include position descriptions and/or performance standards for all environmental department personnel, and excerpts from others having specific environmental duties, and regulatory compliance responsibilities).

    b.    Includes organization charts that identify units, line management, and other individuals having environmental duties and regulatory compliance responsibilities.

    c.    Includes ongoing means of communicating environmental issues and information among the various levels and functions of the organization, to include all persons working for or on behalf of the organization (e.g., on-site service providers and contractors who function as de facto employees), and for receiving and addressing their concerns.

3.    Accountability and Responsibility

    a.    Specifies accountability and environmental responsibilities of organization's managers, and managers of other organizations acting on its behalf for environmental protection and risk reduction measures, assuring compliance, required reporting to regulatory agencies, and corrective actions implemented in their area(s) of responsibility.

1

b. Describes incentive programs for managers and employees to perform in accordance with compliance policies, standards, and procedures.

c. Describes potential consequences for departure from specified operating procedures, including liability for civil/administrative penalties imposed as a result of noncompliance.

4. Environmental Requirements

a. Describes process for identifying potentially applicable environmental requirements; interpreting their applicability to specific operations, emissions, and waste streams; and effectively communicating those applicable environmental requirements to affected persons working for or on behalf of the organization.

b. Describes a process for developing, implementing and maintaining ongoing internal compliance monitoring to ensure that facility activities conform to applicable environmental requirements. Compliance monitoring shall include inspections and measurements, as appropriate.

c. Describes procedures for prospectively identifying and obtaining information about changes and proposed changes in environmental requirements, and incorporating those changes into the EMS (i.e., regulatory "change management").

d. Describes a procedure for communicating with regulatory agencies regarding environmental requirements and regulatory compliance.

5. Assessment, Prevention, and Control

a. Identifies an ongoing process for assessing operations, for the purposes of preventing, controlling, or minimizing reasonably foreseeable releases, environmental process hazards, and risks of noncompliance with environmental requirements. This process shall include identifying operations and waste streams where equipment malfunctions and deterioration, and/or operator errors or deliberate malfeasance, are causing, or have the potential to cause: (1) unplanned or unauthorized releases of hazardous or harmful contaminants to the environment, (2) a threat to human health or the environment, or (3) noncompliance with environmental requirements.

b. Describes process for identifying operations and activities where documented operating criteria, such as standard operating procedures (SOPs), are needed to prevent noncompliance or unplanned/unauthorized releases of hazardous or harmful contaminants, and defines a uniform process for developing, approving and implementing the documented operating criteria.

2

    c.    Describes a system for conducting and documenting routine, objective, self-inspections by department supervisors and trained staff, especially at locations identified by the process described in (a) above, to check for malfunctions, deterioration, worker adherence to operating criteria, unusual situations, and unauthorized or unplanned releases.

    d.    Describes a "management of change" process to ensure identification and consideration of environmental requirements, the environmental aspects/impacts, and potential operator errors or deliberate malfeasance during planning, design, and operation of ongoing, new, and/or changing buildings, processes, equipment, maintenance activities, and products.

6.    Environmental Incident and Non-compliance Investigations

    a.    Describes standard procedures and requirements for internal and external reporting of environmental incidents and noncompliance with environmental requirements.

    b.    Establishes procedures for investigation, and prompt and appropriate correction of noncompliance. The investigation process includes root-cause analysis of identified problems to aid in developing the corrective actions.

    c.    Describes a system for development, tracking, and effectiveness verification of corrective and preventative actions.

7.    Environmental Training, Awareness, and Competence

    a.    Identifies specific education and training required for organization personnel or those acting on its behalf, as well as process for documenting training provided

    b.    Describes program to ensure that organization employees or those acting on its behalf are aware of its environmental policies and procedures, environmental requirements, and their roles and responsibilities within the environmental management system.

    c.    Describes program for ensuring that personnel responsible for meeting and maintaining compliance with environmental requirements are competent on the basis of appropriate education, training, and/or experience.

    d.    Identifies training on how to recognize operations and waste streams where equipment malfunctions and deterioration, and/or operator errors or deliberate malfeasance, are causing, or have the potential to cause: (1) unplanned or unauthorized releases of hazardous or harmful contaminants to the environment,

3

(2) a threat to human health or the environment, or (3) noncompliance with environmental requirements.

8.     Environmental Planning and Organizational Decision-Making

    a.     Describes how environmental planning will be integrated into organizational decision-making, including plans and decisions on capital improvements, product and process design, training programs, and maintenance activities.

    b.     Requires establishing, on an annual basis, written targets, objectives, and action plans for improving environmental performance, by at least each operating organizational subunit with environmental responsibilities, as appropriate, including those for contractor operations conducted at the facility, and how specified actions will be tracked and progress reported. Targets and objectives must include actions that reduce the risk of noncompliance with environmental requirements and minimize the potential for unplanned or unauthorized releases of hazardous or harmful contaminants.

9.     Maintenance of Records and Documentation

    a.     Identifies the types of records developed in support of the EMS (including audits and reviews), who maintains them and, where appropriate, security measures to prevent their unauthorized disclosure, and protocols for responding to inquiries and requests for release of information.

    b.     Specifies the data management systems for any internal waste tracking, environmental data, and hazardous waste determinations.

    c.     Specifies document control procedures.

10.     Pollution Prevention

    a.     Describes an internal process or procedure for preventing, reducing, recycling, reusing, and minimizing waste and emissions, including incentives to encourage material substitutions. Also includes mechanisms for identifying candidate materials to be addressed by the pollution prevention program and tracking progress.

11.     Continuing Program Evaluation and Improvement

    a.     Describes program for periodic (at least annually) evaluation of the EMS, which specifies a process for translating assessment results into EMS improvements. The program shall include communicating findings and action plans to affected organization employees or those acting on its behalf.

b.     Describes a program for periodic audits (at least annually) of facility compliance with environmental requirements by an independent auditor(s). Audit results are reported to upper management and instances of noncompliance are addressed through the process described in element 6 above.

12.     Public Involvement/Community Outreach

a.     Describes a program for ongoing community education and involvement in the environmental aspects of the organization's operations and general environmental awareness.

Appendix B

Dominion Fixed Facilities

| Dominion Facility | Permit Number |
|---|---|
| Bremo Power Station | VA0004138 |
| Chesapeake Energy Center | VA0004081 |
| Gordonsville Power Station | VA0087033 |
| Pittsylvania Power Station | VA0083399 |
| Possum Point Power Station | VA0002071 |
| Southampton Power Station | VA0082767 |
| Yorktown Power Station | VA004103 |
| Bath County Power Station | VA0053317 |
| Bear Garden Generating Station | VA0090891 |
| Chesterfield Power Station | VA0004146 |
| Hopewell Power Station | VA0082783 |
| Mecklenburg Power Station | VA0084069 |
| VA City Hybrid Energy Center | VA0092746 |